IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

HORACE GREEN,
    Plaintiff,

vs.                                    Case No.: 5:11cv156/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.    PROCEDURAL HISTORY

    On January 17, 2007, Plaintiff filed an application for a closed period of disability, from October 4, 2006, through April 1, 2008 (Tr. 11).[1] His application was denied initially and on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on August 22, 2011 (Doc. 13). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

("ALJ"). A hearing was held on February 2, 2010, and on February 16, 2010, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, during the closed period alleged by Plaintiff (Tr. 11–22). On March 29, 2011, the Appeals Council denied Plaintiff's request for review (Tr. 1). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

II.    FINDINGS OF THE ALJ

On February 16, 2010, the ALJ made several findings relative to the issues raised in this appeal (Tr. 11–22):

1)    Plaintiff met the insured status requirements of the Act through December 31, 2010, and thus was insured for DIB purposes during the closed period.

2)    Plaintiff did not engage in substantial gainful activity during the closed period.

3)    Plaintiff had the following severe impairments: cervical degenerative disc disease, history of sleep apnea, history of hypertension, history of hyperlipidemia, history of obesity, borderline intelligence quotient ("IQ"), post traumatic stress disorder ("PTSD"), and dysthymic disorder.

4)    Plaintiff had no impairment or combination of impairments that met or medically equaled a listed impairment.

5)    Plaintiff had the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 404.1567(b),[2] with some exceptions related to physical and mental limitations.

6)    Plaintiff could perform his past relevant work as an industrial cleaner and other work that was available during the closed period; therefore, he was not disabled between October 4, 2006, and April 1, 2008.

III.   STANDARD OF REVIEW

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV. PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

A. Personal and Employment History

Plaintiff was born on February 19, 1963, and thus was forty-three years of age on the date he alleges he became disabled (Tr. 53). He completed the twelfth grade and attended college, full-time, for two years (Tr. 53, 240). Plaintiff studied automotive mechanics and physical education in college but did not obtain a degree (Tr. 53, 75). Prior to the closed period alleged by Plaintiff, he worked as a commercial/institutional cleaner, which was an "unskilled" job, and as a psychiatric

aide in a state mental facility, which was a "semi-skilled" job,[3] in addition to other employment (Tr. 16, 79, 82; *see also* Tr. 197–98 (earnings records, reflecting continuous employment from 1986 through 2005)).[4] Plaintiff began working at the state mental facility in or about 1998, and on November 25 or 28, 2005, while working there he was attacked by residents of the facility (Tr. 201, 317, 320). The attack caused certain physical injuries, and—according to Plaintiff—also caused or contributed to an inability to focus and feelings of anxiety and depression, made him argumentative, and exacerbated pre-existing, short-term memory problems (*see* Tr. 16, 64, 70, 73). Plaintiff quit working at the facility in October 2006 (Tr. 16, 17, 56). In April 2008, following the alleged closed period, Plaintiff started working at Wal-Mart, and he maintained that employment through the time of his hearing before the ALJ, which was held in February 2010 (Tr. 54). The Wal-Mart job essentially entailed buffing floors, waxing floors, and performing custodial tasks (*id.*).

---

[3] The regulations define unskilled and semi-skilled work as follows:

Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. § 404.1568(a) and (b).

[4] A vocational expert testified at Plaintiff's hearing and noted that the psychiatric aide position has a specific vocational preparation level of four (Tr. 79), which corresponds with semi-skilled work. *See* Social Security Ruling ("SSR") 00-4p (eff. 12/4/00) ("The DOT [Dictionary of Occupational Titles] lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definition[] in 20 CFR 404.1568 . . ., semi-skilled work corresponds to an SVP of 3-4 . . . in the DOT."). *See also* SSR 00-04p ("A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation that is above the unskilled level (requires more than 30 days to learn).").

Case No. 5:11cv156/RS/EMT

B.     Relevant Medical History[5]

Prior to the attack in November 2005, Plaintiff advised Edwardo Williams, M.D., that he had a history of epilepsy but had not experienced a seizure in twenty years. He also reported headaches, anxiety (*see, e.g.*, Tr. 322, 324), and memory loss. Dr. Williams prescribed Effexor for headache control and memory improvement. Additionally, a magnetic resonance imaging of the brain was obtained in July of 2005, and it showed no abnormalities.

Plaintiff returned to Dr. Williams on November 28, 2005, within one to three days of the attack (Tr. 320). He complained of headaches, insomnia, and anxiety, and Dr. Williams opined that Plaintiff should be excused from work for one week (*id.*). Plaintiff also complained of dizziness, but an assessment revealed no underlying condition that might cause this symptom. Plaintiff was referred for psychiatric counseling with Linzey Faison, an advanced registered nurse practitioner ("ARNP"). ARNP Faison saw Plaintiff in December 2005. She noted no prior mental health treatment, and she diagnosed Plaintiff with PTSD and adjustment disorder. ARNP Faison continued to treat Plaintiff in 2006 and 2007, and—according to Carlos Kronberger, Ph.D, ABPP ("American Board of Professional Psychology"), a mental health expert who testified at Plaintiff's hearing—Plaintiff responded favorably to her treatment. Likewise, Plaintiff reported that her treatment had been helpful. In March 2007 ARNP Faison submitted a form, co-signed by Antonio Betancourt, M.D., that indicated they were unsure whether Plaintiff could return to work at that time. In September 2009, ARNP Faison submitted a form titled "Mental Medical Source Statement of Ability to Do Work Activities," on which she opined that Plaintiff would have marked limitations in a number of concentration-oriented tasks.

Dr. Kronberger testified that he saw no record of treatment by Dr. Betancourt. He also opined the statements submitted by ARNP Faison and/or Dr. Betancourt were inconsistent with the totality of the evidence. In support of his opinion, Dr. Kronberger indicated in pertinent part that ARNP Faison and/or Dr. Betancourt "had not really carried out any mental status examinations" and that Plaintiff reported improvement with treatment (Tr. 17). Dr. Kronberger also referenced reports

---

[5] Unless otherwise noted, the information in this section is derived from the opinion of ALJ (Tr. 11–22). Additionally, this section is generally limited to Plaintiff's mental health history because Plaintiff raises only one issue in this appeal, and the issue relates to his mental health.

Case No. 5:11cv156/RS/EMT

from two consultative psychological examinations, conducted by Lawrence Annis, Ph.D., in June 2006 and March 2007.  Dr. Annis essentially opined that Plaintiff could work and would function best in low-stress, manual occupations that require no technical training or independent judgment and deal mostly with things as opposed to people (*see, e.g.*, Tr. 455–58).  Dr. Kronberger also testified that he agreed with Dr. Annis' opinion regarding Plaintiff's work-related abilities.

The record further reflects that Dr. Annis conducted IQ testing during the first examination, in June 2006, which resulted in the following IQ scores:  81 (verbal), 70 (performance), and 74 (full scale) (Tr. 570).  Dr. Annis commented that these scores "denote intellectual functioning in the Low Normal range (IQ 71 to 84)" (*id.*).  Also at the first examination, Dr. Annis diagnosed Plaintiff with borderline intellectual functioning ("BIF"), possible amnestic disorder, and dysthymic disorder.  In March 2007 he dropped the diagnosis of amnestic disorder due to Plaintiff's improvement on memory testing.  Dr. Annis did not retest Plaintiff's IQ during the second examination.

Finally, relevant to the issues in this appeal, Dr. Kronberger testified that the diagnosis of PTSD was appropriate for the relevant time period, as was a possible history of BIF due to Plaintiff's IQ scores and, presumably, some evidence of a learning disability.  Dr. Kronberger indicated, however, that based on Plaintiff's educational history, he was "somewhat skeptical" of the BIF diagnosis (Tr. 38).  Additionally, Dr. Kronberger assessed certain work-related functional limitations; he stated that Plaintiff's conditions should be assessed under listings 12.02, 12.04 and 12.06; and he opined that Plaintiff's conditions did not meet or equal any listing.  He found it notable that Plaintiff continued to work for nearly a year following the triggering event of his PTSD and that Plaintiff sought no aggressive treatment for his alleged depression.

V.     DISCUSSION

Plaintiff raises one issue in this appeal.  He asserts that the ALJ erred by failing to evaluate his BIF under listing 12.05 (*see* doc. 17).  Plaintiff also alleges that had the ALJ done so, he would have been deemed disabled under the "C" criteria of listing 12.05 (*id.*).

The Commissioner's rules provide that if a claimant has an impairment that is listed in or equal to an impairment listed in Appendix 1, Subpart P, following 20 C.F.R. § 404.1599, a finding of disability will be made at step three without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).  "The Secretary explicitly has set the medical criteria defining

the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Sullivan v. Zebley, 493 U.S. 521, 532, 110 S. Ct. 885, 892, 107 L. Ed. 2d 967 (1990). A claimant is entitled to benefits if it is shown that his limitations meet, or are medically or functionally equal to, the limitations set forth in the listing. Shinn ex rel. Shinn v. Comm'r., 391 F.3d 1276, 1282 (11th Cir. 2004).

A claimant has the burden of proving that his impairments meet or equal a listed impairment by presentation of specific evidence of medical signs, symptoms, or laboratory test results meeting all of the specified medical criteria. Sullivan, 493 U.S. at 530. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id.

Listing 12.05 begins with an introductory paragraph, that states, "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. The listing further provides that the "required level of severity for this disorder is met when the requirements in [subsections] A, B, C, or D are satisfied." Id. And subsection C requires, "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id., § 12.05C.

The Eleventh Circuit has determined that in order to be considered for disability benefits under Listing 12.05, a claimant must at least have: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) manifested deficits in adaptive behavior before age twenty-two. Pettus v. Astrue, 226 Fed. Appx. 946, 948 (11th Cir. April 5, 2007) (citing Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997)).

Here, the ALJ did not analyze Plaintiff's condition under listing 12.05, but the ALJ did not err in failing to do so. As noted *supra*, the record contains a one-time assessment of a performance IQ score of 70 by Dr. Annis in June 2006. But the record also contains evidence suggesting that this score may be invalid. For example, Dr. Annis noted that the totality of Plaintiff's IQ scores denote intellectual functioning in the low normal range, which range is from "71 to 84" (Tr. 570) (emphasis

added).  Additionally, Dr. Kronberger opined that Dr. Annis' IQ scores were "a little bit low" (Tr. 43).  He also questioned the validity of the BIF diagnosis and, presumably, the score(s) upon which it is based, noting the extent of Plaintiff's educational background.  Likewise, the low IQ score is inconsistent with Plaintiff's long work history, which includes many years of work in a semi-skilled position with an SVP level of four.

Even if Dr. Annis' IQ scores and diagnosis are valid, however, Plaintiff has still not established that the ALJ erred in failing to evaluate his condition under listing 12.05.  The performance IQ score of 70—the only score that falls within the range of listing 12.05C (i.e., 60 to 70)—was assessed in June 2006, well before the date Plaintiff alleges he became disabled.  Therefore, the score is only marginally relevant to the time period under consideration here.  Additionally, Plaintiff was working at the state mental health facility at the time the score was assessed, and he continued working there until October 2006 (*see e.g.*, Tr. 456 (reflecting Plaintiff's report that he quit his job on October 18, 2006)).  Thus, the IQ score certainly does not compel a finding that Plaintiff's BIF met listing 12.05 or that Plaintiff was otherwise unable to work.

Furthermore, Dr. Kronberger—a mental health expert—specifically advised the ALJ that Plaintiff's conditions should be evaluated under listings 12.02 (organic mental disorders, including memory impairment), 12.04 (affective disorders, including depression), and 12.06 (anxiety disorders, including PTSD), and the ALJ followed his advice (*see* Tr. 14–15, 42–44).  More specifically, and of heightened relevance to the instant claim, Dr. Kronberger testified that listing 12.02 should be analyzed, "given the borderline intellectual functioning" (Tr. 43).  Dr. Kronberger's testimony is perfectly logical, since there is no evidence in the record establishing that Plaintiff meets the introductory paragraph of listing 12.05, which requires a finding of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" (i.e., prior to age twenty-two).  As previously noted, Plaintiff graduated from high school (Tr. 291).  Additionally, his high school transcripts reflect that he achieved average and above-average grades and was awarded a diploma long before he attained the age of twenty-two (*see id.*, reflecting grades (mainly "B's" and "C's") and grade point averages (ranging from 2.125 through 2.600) from 1979 through 1982).  Moreover, Plaintiff attended college for two years and held substantial gainful employment thereafter for multiple, consecutive years,

including employment in a semi-skilled job with an SVP level of four.  Furthermore, Dr. Annis opined, prior to the closed period and <u>during the closed period</u>, that Plaintiff was capable of working and would work best in jobs that deal with "things," such as cleaning jobs (*see* Tr. 458, 571).  Consistent with these opinions, Plaintiff began working at Wal-Mart as a floor cleaner just after the closed period, and continued to do so through the time of his hearing (*see* Tr. 458, 571).  Dr. Kronberger, too, believed Plaintiff could have worked during the closed period and would have performed best in jobs involving manual labor.  Additionally, Dr. Annis opined that Plaintiff was capable of managing funds (Tr. 571).  Further, the record establishes that Plaintiff has a driver's license, and—as the ALJ noted—drives once or twice a year by himself to Atlanta, Georgia, from his home in Florida, to visit family members.

Thus, the ALJ did not err in following the medical expert's advice and evaluating Plaintiff's conditions only under listings 12.02, 12.04, and 12.06, since the evidence does not point to the necessity of an evaluation under listing 12.05.  *See, e.g.*, <u>Preston ex rel. K.B. v. Astrue</u>, No. 3:06-cv-1080-J-TEM, 2008 WL 876349, at *7 (M.D. Fla. March 27, 2008) (finding no error in ALJ's reliance on opinions of non-examining medical expert who testified at the claimant's hearing, noting that the ALJ's choice to solicit input from the board-certified expert was "prudent," and stating that the "ALJ was entitled to rely upon [the expert's] opinions concerning the severity of Plaintiff's impairments and whether Plaintiff met a listing") (citation to C.F.R. omitted).  Stated simply, Plaintiff has failed to carry his burden of proving that his impairment meets <u>all</u> the criteria of listing 12.05, not just the IQ criterion found in subsection C.  *See* <u>Sullivan</u>, 493 U.S. at 530; *see also* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) ("This court . . . has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.")[6] (citing <u>Popp v. Heckler</u>, 779 F.2d 1497, 1499 (11th Cir. 1986) (rejecting claim of mental retardation under 12.05C where claimant's IQ score of 69 was inconsistent with evidence that he had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in

---

[6] In <u>Lowery</u>, the Commissioner conceded that the IQ score was valid and that the claimant had additional work-related limitations.  979 F.2d at 838.  Hence, the only issue was whether there was evidence that the mental retardation manifested itself before age twenty-two.  *Id.*

various technical jobs such as administrative clerk, statistical clerk, and algebra teacher))[7]; Bischoff v. Astrue, No. 07-60969-CIV, 2008 WL 4541118 (S.D. Fla. Oct. 9, 2008) (affirming determination that Listing 12.05C was not met even though IQ scores were below 70, and noting (among other factors) that claimant previously worked as a parts manager and automobile mechanic, jobs which required technical knowledge and skills, and he successfully supervised other people for five years); Davis v. Astrue, No. 2:07cv880/TFM, 2008 WL 2939523 (M.D. Ala. Jul. 25, 2008) (although claimant had an IQ score under 70, she had completed twelfth grade, received training in cosmetology and secretarial skills, had a driver's license, was able to read, write, and perform simple math, and a consulting psychologist had determined she was in the borderline level of intellectual functioning rather than mildly retarded); Lyons v. Astrue, No. 2:08cv614/FtM/29/SPC, 2009 WL 1657388 (M. D. Fla. Jun. 10, 2009) (claimant did not meet IQ criteria where he obtained a high school diploma, did not take special education classes, took care of his personal needs, earned from $13,000 to $18,000 per year for seven years, and there was evidence that he was malingering when he took the intelligence tests).

Finally, even if the ALJ did err by failing to consider listing 12.05, any error is harmless because Plaintiff clearly does not meet the criteria of the listing. *See, e.g.*, Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (the ALJ's decision will stand when an incorrect application of the regulations results in "harmless error," because the correct application would not contradict the ALJ's ultimate findings); *see also* Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003) (the harmless error inquiry involves determining "whether the ALJ would have reached the same decision denying benefits, even if he had followed the proper procedure . . . ."); East v. Barnhart, 197 Fed. Appx. 899, 901 n.3 (11th Cir. 2006) (failure to mention psychologist's report harmless where findings in report were consistent with ALJ's ultimate determination).

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560.

---

[7] The undersigned recognizes that in Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001), the court held that "absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout her life." But a valid IQ score is not conclusive evidence of mental retardation where, as here, the IQ score is inconsistent with other evidence in the record. *See id.* (also citing Popp, 779 F.2d at 1499).

Case No. 5:11cv156/RS/EMT

Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 1st day of May 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**